IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| J. DOE, *a minor child,*<br>*by and through their mother*, Jane Doe,<br>*also an individual,*<br><br>　　　　　　　　　　　　*Plaintiffs,*<br><br>v.<br><br>RYAN WALTERS, *an individual and in his official*<br>*capacity as State Superintendent of Public Instruction and*<br>*Chair of the Oklahoma State Board of Education,*<br>et al.*,*<br><br>　　　　　　　　　　　　*Defendants.* | No. CIV 24-34-R |

## <u>DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT</u>

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 2

A.   Plaintiffs lack a cognizable injury to maintain suit against these Defendants. (All Counts) ...................................................................................................................... 2

B.   Plaintiffs fail to state a valid legal claim. ............................................................. 3

1.   The Rule is valid. (Count 1) ................................................................................ 3

2.   Plaintiffs have no substantive interest that would support a due process, parental rights, or arbitrary and capricious claim. (Counts 1–5) ............................................... 4

a)   Plaintiffs lack any cognizable substantive due process interest under the federal or state constitutions. .................................................................................................... 4

b)   Plaintiff Parent likewise lacks any substantive interest under Oklahoma statutes ... 8

c)   Without a substantive interest, Plaintiffs lack any procedural rights ........................ 9

d)   A state official may properly restrict proceedings to parties with a substantive interest. ...................................................................................................................... 10

3.   Maintaining accurate records is not discrimination under Title IX. (Count 6) .......... 11

a)   Plaintiff was not subjected to discrimination in an education program or activity. .................................................................................................................... 11

b)   Plaintiff was not discriminated against on the basis of sex ..................................... 12

4.   Maintaining accurate records is not discrimination under Equal Protection. (Count 7) .................................................................................................................... 16

a)   Plaintiff fails to allege facts establishing the Rule purposefully discriminates between two groups of people. .................................................................................... 18

b)   Plaintiffs fail to allege facts establishing the Rule purposefully discriminates against a suspect class. ........................................................................................................... 19

c)   The Rule survives rational basis review. ............................................................... 21

C.   The claim for damages should be dismissed. ......................................................... 23

1.   The individual capacity defendants are entitled to qualified immunity. ..................... 23

2.   The official capacity defendants are immune from damages. .................................... 25

III.   CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*,
57 F.4th 791(11th Cir. 2022) (en banc)..................................................16

*Al-Khouri v. Oklahoma Health Care Auth.*,
2018 OK CIV APP 10, 419 P.3d 366;..................................................12

*Apodaca v. Raemisch*,
864 F.3d 1071 (10th Cir. 2017) ..........................................................31

*Ashaheed v. Currington*,
7 F.4th 1236 (10th Cir. 2021) .............................................................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................3

*Blau v. Fort Thomas Pub. Sch. Dist.*,
401 F.3d 381 (6th Cir. 2005) ..............................................................10

*Bostock v. Clayton Cnty., Georgia*,
140 S. Ct. 1731 (2020) ................................................................passim

*Bridge on behalf of Bridge v. Okla. State Dept. of Educ.*, --- F. Supp. 3d ----, 2024 WL 150598
(W.D. Okla. 2024) ...............................................................................17

*Brown v. Zavaras*,
63 F.3d 967 (10th Cir. 1995) ..............................................................25

*Callahan v. Unified Gov't of Wyandotte Cty.*,
806 F.3d 1022 (10th Cir. 2015) ..........................................................32

*Carney v. Okla. Dept. of Public Safety*,
875 F.3d 1347 (10th Cir. 2017) ..........................................................28

*Castanon v. Cathey*,
402 F. Supp. 3d 1240 (W.D. Okla. 2019) ..............................12, 31, 32

*Citizens for Const. Integrity v. United States*,
57 F.4th 750 (10th Cir. 2023)..............................................................28

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
473 U.S. 432 (1985) ......................................................................21, 23

*Clinton v. Sec. Benefit Life Ins. Co.*,
63 F.4th 1264 (10th Cir. 2023)..............................................................3

*Crowley v. McKinney*,
400 F.3d 965 (7th Cir. 2005). ...............................................................9

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
489 U.S. 189 (1989)...............................................................................8

*Dobbs v. Jackson Women's Health Org.*,
142 S. Ct. 2228 (2022) ..........................................................................6

*Doyle v. Okla. Bar Ass'n*,
   998 F.2d 1559 (10th Cir. 1993) ................................................................. 8, 12

*Druley v. Patton*,
   601 F. App'x 632 (10th Cir. 2015) ................................................................. 25

*Estate of Reat v. Rodriguez*,
   824 F.3d 960 (10th Cir. 2016) ................................................................. 32

*Etsitty v. Utah Transit Auth.*,
   502 P.3d 1215 (10th Cir. 2007) ................................................................. 24

*F.C.C. v. Beach Commc'ns, Inc.*,
   508 U.S. 307 (1993) ................................................................. 29

*Fowler v. Stitt*,
   No. 22CV115, --- F. Supp. 3d. ----, 2023 WL 4010694 (N.D. Okla. June 8, 2023)......passim

*Frontiero v. Richardson*,
   411 U.S. 677 (1973) ................................................................. 26

*Gebser v. Lago Vista Independent Sch. Dist.*,
   524 U.S. 274 (1998) ................................................................. 16

*Griffith v. El Paso Cnty., Colorado*,
   No. 21CV387, 2023 WL 2242503, (D. Colo. Feb. 27, 2023), *report and recommendation
   adopted,* 2023 WL 3099625 (D. Colo. Mar. 27, 2023) ................................................................. 25

*Grimm v. Gloucester Cnty. Sch. Bd.*,
   972 F.3d 586 (4th Cir. 2020) ................................................................. 18, 20

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ................................................................. 31

*Heller v. Doe by Doe*,
   509 U.S. 312 (1993) ................................................................. 29

*In re Mallo*,
   774 F.3d 1313 (10th Cir. 2014) ................................................................. 17

*Jackson v. Birmingham Bd. of Educ.*,
   544 U.S. 167 (2005) ................................................................. 13, 16

*Kelley v. Iowa State Univ. of Science and Technology*,
   311 F. Supp. 3d 1051 (S.D. Iowa 2018) ................................................................. 15

*Kerns v. Bader*,
   663 F.3d 1173 (10th Cir. 2011) ................................................................. 31

*Lee v. Poudre Sch. Dist.*,
   No. 23CV1117, 2023 WL 8780860 (D. Colo. 2023) ................................................................. 25

*Leiser v. Moore*,
   903 F.3d 1137 (10th Cir. 2018 ................................................................. 7

*McCleskey v. Kemp*,
   481 U.S. 279 (1987) ................................................................. 22

*Meriwether v. Hartop*,
   992 F.3d 492 (6th Cir. 2021) ................................................................. 16

*Michael H. v. Gerald D.*,
  491 U.S. 110 (1989) ............................................................................7

*Michael M. v. Superior Ct. of Sonoma Cnty.*,
  450 U.S. 464 (1981) ...................................................................27, 28

*Olim v. Wakinekona*,
  461 U.S. 238 (1983) ..........................................................................12

*Parents for Priv. v. Barr*,
  949 F.3d 1210 (9th Cir. 2020) ............................................................9

*PJ ex rel. Jensen v. Wagner*,
  603 F.3d 1182 (10th Cir. 2010) .....................................................9, 12

*Rossley v. Drake Univ.*,
  958 F.3d 679 (8th Cir. 2020) ............................................................14

*Seamons v. Snow*,
  84 F.3d 1226 (10th Cir. 1996) ..........................................................14

*SECSYS, LLC v. Vigil*,
  666 F.3d 678 (10th Cir. 2012) ...............................................21, 22, 23

*Shields v. Pro. Bureau of Collections of Maryland, Inc.*,
  55 F.4th 823 (10th Cir. 2022) .............................................................2

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) .............................................................................2

*Swanson by & Through Swanson v. Guthrie Indep. Sch. Dist. No. I-L*,
  135 F.3d 694 (10th Cir. 1998) ..........................................................10

*Tarrant Reg'l Water Dist. v. Sevenoaks*,
  545 F.3d 906 (10th Cir. 2008) ..........................................................34

*Taylor v. Roswell Indep. Sch. Dist.*,
  713 F.3d 25 (10th Cir. 2013) ............................................................21

*Teigan v. Renfrow*,
  511 F.3d 1072 (10th Cir. 2007) ........................................................22

*Timbs v. Indiana*,
  139 S. Ct. 682 (2019) ..........................................................................6

*Tonkovich v. Kan. Bd. of Regents*,
  159 F.3d 504 (10th Cir. 1998) ..........................................................22

*Troxel v. Granville*,
  530 U.S. 57 (2000) ...............................................................................9

*Tuan Anh Nguyen v. I.N.S.*,
  533 U.S. 53 (2001) .............................................................................26

*Tudor v. Se. Oklahoma State Univ.*,
  13 F.4th 1019 (10th Cir. 2021) .........................................................26

*Ulane v. E. Airlines, Inc.*,
  742 F.2d 1081 (7th Cir. 1984) ..........................................................18

*United States v. O'Brien,*
   391 U.S. 367 (1968) ...........................................................................................28

*United States v. Virginia,*
   518 U.S. 515 (1996) ..................................................................................... 26, 27

*W. Heights Indep. Sch. Dist. No. I-41 of Oklahoma Cnty. v. State ex rel. Oklahoma State Dep't of Educ.,*
   2022 OK 79, 518 P.3d 531 ................................................................................12

*Washington v. Davis,*
   426 U.S. 229 (1976) .........................................................................................24

*Washington v. Glucksberg,*
   521 U.S. 702 (1997) .......................................................................................6, 7

*Washington v. Unified Gov't of Wyandotte Cty.,*
   847 F.3d 1192 (10th Cir. 2017) ........................................................................32

*Wolfe v. Fayetteville, Ark. Sch. Dist.,*
   648 F.3d 860 (8th Cir. 2011) ............................................................................15

## Statutes

20 U.S.C. § 1681 ...................................................................................13, 16, 19, 28

20 U.S.C. § 1687 ..............................................................................................13

25 O.S. § 2001 ..................................................................................................10

25 O.S. § 2002 ............................................................................................ 10, 11

25 O.S. § 2003 ..................................................................................................10

42 U.S.C. § 2000e-2 ..........................................................................................16

63 O.S. § 1-321 .................................................................................................29

70 O.S. § 1-125 .................................................................................................29

70 O.S. § 1-125. ..................................................................................................8

70 O.S. § 24-114 .........................................................................................passim

70 O.S. § 27-106 ........................................................................................... 8, 29

75 O.S. § 318 ....................................................................................................12

## Other Authorities

117 Cong. Rec. 30399, 20406 (1971) ...............................................................19

Meeting, *Oklahoma State Department of Education*, FACEBOOK (Oct. 26, 2023),
   https://www.facebook.com/OklaSDE/videos/1051275442964112/. ...............32

Meeting, *Oklahoma State Department of Education*, FACEBOOK (Sept. 28, 2023),
   https://www.facebook.com/OklaSDE/videos/836443861282370/. .................31

Paul C. Sweeny, *Abuse Misuse & Abrogation of the Use of Legislative History: Title IX & Peer Sexual Harassment*, 66 UMKC L. Rev. 41, 54 (1997). ....................................19

*The American College Dictionary* 1109 (1970) ................................................18

*The American Heritage Dictionary* 1187 (1976) ...............................................18

*The American Heritage Dictionary of the English Language* 1187 (1980) ...........18

*The Oxford English Dictionary* 578 (1961) ...................................................................................17

*The Random House College Dictionary* 1206 (rev. ed. 1973)........................................................18

*The Random House College Dictionary* 1206 (rev. ed. 1980)........................................................18

*Webster's New College Dictionary* 1054 (1979) ..........................................................................18

**Rules**

Fed. R. Civ. P. 12(b)(1) ...............................................................................................................1

Fed. R. Civ. P. 12(b)(6) ...............................................................................................................1

OAC 210:10-1-24 ...............................................................................................................passim

**Constitutional Provisions**

Okla. Const. art. 2, § 7 .................................................................................................................4

U.S. Const. amend. XIV................................................................................................................4

## I.   INTRODUCTION

Plaintiffs have no right to alter accurate prior year records of the State and its subdivisions. School records tell who a student was at the time of enrollment and attendance. The Legislature has also commanded the State Board to secure the past records of schools. Any authority Plaintiffs have over current enrollment is not affected by the rule, and their bare desire to alter accurate prior year records and eliminate truth has no basis in law.

The Complaint suffers from four defects that warrant dismissal at the outset. *First*, it fails to allege any injury by Defendants. The rule does not command Moore Public Schools ("Moore") to release prior year records to anyone, and it has no effect on how Moore structures its transcripts. *Second*, the Complaint attacks the rule's validity through a citation error. Examining the correct statutory provision shows that the rule is valid. *Third*, the complaint attempts to invent new substantive rights in ways that are foreclosed by precedent. There is no constitutional or statutory right to compel the government to keep records in a certain way, and there is no right to a hearing where no substantive rights are at issue. *Fourth*, the neutral act of securing existing records from revision does not violate Title IX or equal protection. Maintaining accurate past records is not discrimination.

Based on those defects and the other arguments herein, all Defendants move this Court to dismiss the above-captioned Complaint for lack of standing and failure to state a claim. Fed. R. Civ. P. 12(b)(1), (6).

## II.    ARGUMENT

### A.    Plaintiffs lack a cognizable injury to maintain suit against these Defendants. (All Counts)

To have standing for a legal claim, a plaintiff must have "(1) an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Shields v. Pro. Bureau of Collections of Maryland, Inc.*, 55 F.4th 823, 827 (10th Cir. 2022) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). Standing is required by Article III of the Constitution, and the Tenth Circuit reviews standing as a motion under Rule (12)(b)(1). *See id.*

Plaintiffs' alleged injury is disclosure of transgender status by Moore, but Plaintiffs fail to explain how Defendants' actions require such disclosure. The Rule merely requires retention of accurate prior year records without reference to current year records or to disclosure. OAC 210:10-1-24 (hereinafter "the Rule"). Thus, assuming Plaintiffs and Moore changed current year records, it is unclear how Moore discloses transgender status.

Nothing in Defendants' rule prohibits a school district's transcript from using the most recent enrollment information and a listing of prior year grades. Defendants are not aware of any "college or vocational school," Compl. ¶ 28, or any "jobs and certifications," *id.*, that require more than a transcript. If Moore is publicizing transgender status through its own transcript methods, that is no fault of the Rule or Defendants.

Therefore, assuming Plaintiffs' allegations are true that Moore disclosed or intends to disclose their transgender status, they have failed to allege any such disclosure that is traceable to Defendants' conduct. The lack of a traceable injury also means that redressability is lacking. If Moore intends to disclose the transgender status it knows, the presence or absence of

accurate records would not erase Moore's knowledge. For either lack of traceability or lack of redressability, Plaintiffs lack standing for their claims. Accordingly, the Complaint should be dismissed in its entirety on this basis alone.

**B.      Plaintiffs fail to state a valid legal claim.**

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that, if true, 'state a claim to relief that is plausible on its face.'" *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1274 (10th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court "need not accept '[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). While the Court must view a complaint in a light most favorable to the nonmoving party, courts need not accept as true "labels and conclusions," legal characterizations, unwarranted deductions of fact, or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678-679 (citation omitted).

**1.      The Rule is valid. (Count 1)**

Plaintiffs' claim against the Rule fails because they cited the wrong statutory provision. Plaintiffs argue that 70 O.S. § 24-114 provides no rulemaking authority because subpart D does not permit this rule. Compl. ¶ 44. Defendants are relying on subpart B, not subpart D. State law provides that "[r]ecords shall be stored, backed up and secured in accordance with standards and protocol developed by the State Board of Education." 70 O.S. § 24-114(B). The State Board has express authority under that provision to set the standards and protocol for storage, backing up, and security of student records. *See id.* The Rule exercises that authority by issuing directions to school districts regarding how they store and secure records. *See* OAC

210:10-1-24. Plaintiffs failed to plead why subpart B is inapposite. Accordingly, the Rule is valid under subpart B, and the part of Count 1 regarding rule validity must be dismissed.[1]

## 2. Plaintiffs have no substantive interest that would support a due process, parental rights, or arbitrary and capricious claim. (Counts 1–5)

Plaintiffs' alleged substantive interests rely on faulty reasoning. The due process clauses of both the federal and state constitutions *restrict* governmental action against "life, liberty, or property." U.S. Const. amend. XIV; Okla. Const. art. 2, § 7. As explained below, due process does not permit a plaintiff to *compel* governmental action, like altering how records are kept.

Without a cognizable substantive interest, most of Plaintiffs' claims fail. They have no cognizable substantive due process interest that would support Count 4 or 5. Likewise, there is no statutory substantive interest that would support Count 2, regarding parental rights. Because Plaintiffs lack a substantive interest, they also lack any procedural rights under Counts 3 or 5 because a plaintiff with no substantive interests has no procedural rights.[2] The arbitrary and capricious claim in part of Count 1 similarly relies on denial of procedure, and thus it fails for the same reasons as the other procedural claims. Based on these four issues, addressed in turn below, Defendants seek dismissal of the remainder of Count 1 and all of Counts 2–5.

### a) Plaintiffs lack any cognizable substantive due process interest under the federal or state constitutions.

Plaintiffs claim three liberty interests, two of which they want this court to recognize in the first instance. *First*, they allege a liberty interest in "maintaining privacy over their gender

---

[1] Count 1 asserts both a validity claim and a claim that the rule is arbitrary and capricious. Those arguments are addressed separately in this brief. *See* Parts II.B.1, II.B.2.d.

[2] Defendants are unclear whether Count 5 addresses substantive due process or procedural due process, but Defendants believe it can and should be dismissed under either construction.

identity by protecting their gender transition from disclosure absent their consent." Compl. ¶ 38. *Second*, they allege a liberty interest "in their reputation." *Id.* ¶ 39. *Third*, they assert the liberty interest in parental rights attaches here and extends beyond control of the child to control of the government. *Id.* ¶¶ 69–70. The Court should not create new liberty interests, and any parental rights liberty interest does not apply to school records.

The Due Process Clauses protect two categories of substantive rights: those guaranteed by the first eight amendments, and "a select list of fundamental rights that are not mentioned anywhere in the Constitution." *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2246 (2022).[3] In deciding whether a right falls into either of these categories, the Supreme Court "has long asked whether the right is 'deeply rooted in [our] history and tradition' and whether it is essential to our Nation's 'scheme of ordered liberty'" *Id.* (quoting *Timbs v. Indiana*, 139 S. Ct. 682, 686 (2019)). In *Timbs*, the Court held that the protection against excessive fines was "fundamental to our scheme of ordered liberty" and "deeply rooted in this Nation's history and tradition" by tracing back to the Magna Carta, Blackstone's Commentaries, and 35 of the 37 state constitutions in effect at the ratification of the Fourteenth Amendment. *Timbs*, 139 S. Ct. at 687–690. A historical examination is necessary when a court is asked to recognize a new component of the "liberty" protected by the Due Process Clause because "the term 'liberty' alone provides little guidance." *Dobbs*, 142 S. Ct. at 2247. And the Supreme Court has stated that "[w]e must … exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the

---

[3] Defendants agree with Plaintiffs that Oklahoma's substantive due process follows its federal counterpart. *See* Compl. ¶ 75. Thus, this section applies equally to the federal and state due process clauses.

policy preferences of the Members of this Court." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). The Court has also cautioned that rights found from examining history and tradition should identify "the most specific level" at which "the asserted right can be identified" to avoid creating new rights at a high level of generality. *Michael H. v. Gerald D.*, 491 U.S. 110, 127 n.6 (1989) (plurality op.); *see also Glucksberg*, 521 U.S. 702, 769–70 (1997) (Souter, J., concurring).

Nothing in the Complaint asserts a deeply rooted historical basis for identity privacy or reputation as a liberty interest against the governmental recording of information. To the extent any right to informational privacy exists at all, it is a protection against governmental disclosures of private or medical information "only when they shock the conscience." *Leiser v. Moore*, 903 F.3d 1137, 1144 (10th Cir. 2018). Plaintiffs do not allege that sex should not be recorded; they merely seek to record it differently, meaning they have no claim that the recording of any sex violates a right to privacy or reputation. Plaintiffs' primary theory of injury to the liberty interest is also nonparty disclosure, *see* Part II.A, and so any informational privacy right is not at issue in this case. Thus, any potential liberty interest in those two allegations does not have a deeply-rooted historical basis to exist and would not apply in this case.

This Court should also decline to invent either of those rights because the purported rights seek to compel rather than restrain governmental action. "Substantive due process rights do not encompass a right to compel a state to do something *for* someone not under some form of custody or restraint." *Doyle v. Okla. Bar Ass'n*, 998 F.2d 1559, 1568 (10th Cir. 1993) (emphasis in original); *Fowler v. Stitt*, No. 22CV115, --- F. Supp. 3d. ----, 2023 WL 4010694, at *15 (N.D. Okla. June 8, 2023) (quoting same). Plaintiffs have "no affirmative right to

governmental aid," even if that affirmative aid would avert injuries. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989). As a result, substantive due process rights cannot assist plaintiffs who "want to *compel* the government to amend its own records to reflect Plaintiffs' desired characteristics." *Fowler*, 2023 WL 4010694, at *15 (emphasis in original). Because Plaintiffs seek exactly that compulsion, their asserted liberty interests in privacy or reputation cannot exist under substantive due process.

Plaintiffs also cannot have a liberty interest in avoiding disclosure of their transgender status because its disclosure is compelled under state law. *First*, their birth certificate will reveal their transgender status in some circumstances. *See generally Fowler*, 2023 WL 4010694. *Second*, their use of a bathroom that matches their biological sex may reveal their transgender status. *See* 70 O.S. § 1-125. *Third*, if they participate in sports, their participation on a team that matches their biological sex may reveal their transgender status. 70 O.S. § 27-106. If their birth certificate records their biological sex *and* they are using a bathroom or playing on a sports team that matches biological sex, it is unclear what further interest attaches to a second set of records that are less likely to be disclosed retaining the same information. Ultimately, they cannot have a privacy interest against disclosure in this case when other, unchallenged statutes compel disclosure.

To avoid the problems with those two asserted interests, the Plaintiff parent asserts the liberty interest in parental rights, but that interest does not apply to these facts. Parental rights are rights over the student, not the government. *See Troxel v. Granville*, 530 U.S. 57, 65 (2000)

("the interest of parents in the care, custody, and control *of their children*" (emphasis added)).[4]
Put more precisely for this case, the parent's right "is not a right to participate in the school's
management." *Crowley v. McKinney*, 400 F.3d 965, 971 (7th Cir. 2005). As multiple circuits have
held, parents "lack constitutionally protected rights to direct school administration more
generally." *Parents for Priv. v. Barr*, 949 F.3d 1210, 1231 (9th Cir. 2020); *see Blau v. Fort Thomas
Pub. Sch. Dist.*, 401 F.3d 381, 395 (6th Cir. 2005) (collecting citations); *cf. Swanson by & through
Swanson v. Guthrie Indep. Sch. Dist. No. I-L*, 135 F.3d 694, 699 (10th Cir. 1998) (denying any
constitutional right over curriculum). This rule makes sense under substantive due process
because the due process clauses do not confer any right to *compel* government action. *See supra*.
Accordingly, although the parental rights liberty interest does exist, it is not a right over the
government and how it retains records; thus, it is not at issue here.

Lacking any cognizable interest on these facts, Plaintiffs cannot advance a substantive
due process claim. Accordingly, Counts 4 and 5 should be dismissed.

### b) Plaintiff Parent likewise lacks any substantive interest under Oklahoma statutes.

While Oklahoma statutes grant additional parental rights beyond constitutional rights,
*see* 25 O.S. §§ 2001–2005, none of those statutory rights are at issue here. Two provisions relate
to student records. The first grants parents "the right to access and review all school records
relating to the minor child." *Id.* § 2002(a)(2). The second grants parents "the right to opt out
of any data collection instrument at the district level that would capture data for inclusion in

---

[4] The Tenth Circuit additionally recognizes a "right to familial association." *PJ ex rel. Jensen v.
Wagner*, 603 F.3d 1182, 1199 (10th Cir. 2010). Plaintiffs do not invoke this right in the
complaint.

the state longitudinal student data system except what is necessary and essential for establishing a student's public school record." *Id.* § 2003(A)(7)(q).

Neither statutory right applies here. There is no allegation that Defendants prevented Plaintiffs from "access and review" of school records. There is also no allegation that Plaintiffs sought to opt-out of reporting sex or gender or that such data is unnecessary for the public school record.

Lacking any statutory right on point, Plaintiffs point to the residual clause. *See* Compl. ¶ 60 (quoting 25 O.S. § 2002(D)). They do not explain how the residual clause regarding parental rights would create a right where none exists under the constitution. By its plain terms, the residual clause merely affirms that the enumeration of parental rights is not an exhaustive list. *See* 25 O.S. § 2002(D). Even assuming that the residual clause created rights, it also specifies that it applies "[u]nless otherwise required by law," *id.*, and state law commits security and storage of prior year records solely to the State Board. *See* 70 O.S. § 24-114(B). Thus, any new implied rights from the residual clause would not attach here because of the express assignment of responsibility over records to the State Board.

Under existing statutes, the Plaintiff Parent lacks any substantive interest in editing prior year records. Accordingly, Count 2 should be dismissed.

      **c)**      **Without a substantive interest, Plaintiffs lack any procedural rights.**

Without a substantive right, Plaintiffs cannot claim any procedural rights. "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Doyle*, 998 F.2d at 1570 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)); *see also, e.g.*, *PJ ex rel. Jensen*, 603 F.3d at 1200 (quoting

*Doyle*); *Castanon v. Cathey*, 402 F. Supp. 3d 1240, 1253 n.10 (W.D. Okla. 2019). "The mere expectation of receiving a state afforded process does not itself create an independent liberty interest protected by the Due Process Clause." *Doyle*, 998 F.2d at 1570.[5]

Plaintiffs lack any substantive interest that procedure would protect. *See supra* Part II.B.2.a-b. Accordingly, they also lack any procedural due process claim, and Counts 3 and 5 should be dismissed.

### d)    A state official may properly restrict proceedings to parties with a substantive interest.

Plaintiffs' claim of an arbitrary and capricious rule, Compl. ¶¶ 56-57, relies on the success of their other claims. They cite the Oklahoma statutes regarding notice to parties. *See id.* (citing 75 O.S. § 318). Assuming that statute applies, the Rule makes the *school district* the party to any proceeding under it. *See* OAC 210:10-1-24. Because Plaintiffs are not parties under the Rule, their real argument is that they *should* have been parties, which is identical to their procedural due process argument. Thus, the arbitrary and capricious claim in Count 1 fails for the same reason as their procedural due process argument: they lack a cognizable substantive interest that entitles them to be heard. Accordingly, the remainder of Count 1 not addressed above, *see supra* Part II.A, should be dismissed.

---

[5] The Oklahoma due process clause follows these same rules regarding procedural due process. *See Al-Khouri v. Oklahoma Health Care Auth.*, 2018 OK CIV APP 10, ¶ 7, 419 P.3d 366, 370; *cf. W. Heights Indep. Sch. Dist. No. I-41 of Oklahoma Cnty. v. State ex rel. Oklahoma State Dep't of Educ.*, 2022 OK 79, ¶ 74, 518 P.3d 531, 553 (applying federal case law on procedural due process to the Oklahoma constitution).

### 3. Maintaining accurate records is not discrimination under Title IX. (Count 6)

Title IX provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). As the U.S. Supreme Court summarized, "Title IX is a broadly written general prohibition on discrimination, followed by specific, narrow exceptions to that broad prohibition." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005). To state a plausible claim under Title IX, a plaintiff "must show: (1) that he or she was excluded from participation in, denied the benefits of, or subjected to discrimination in an educational program; (2) that the program receives federal assistance; and (3) that the exclusion from the program was on the basis of sex." *Seamons v. Snow*, 84 F.3d 1226, 1232 (10th Cir. 1996).

### a) Plaintiff was not subjected to discrimination in an education program or activity.

Title IX defines "program or activity" as including "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government." 20 U.S.C. § 1687(1)(A). Then, "this broad category of 'all of the operations' in § 1687 is narrowed by the descriptor '*education* program or activity' in § 1681(a)." *Rossley v. Drake Univ.*, 958 F.3d 679, 684 (8th Cir. 2020). Thus, "if the action taken 'on the basis of sex' against the person did not exclude, deny, or subject the person to discrimination under an education program or activity, then the action cannot be brought under § 1681(a)." *Id.*

Plaintiff has not been excluded from or subjected to discrimination in any education program and does not allege as much. Plaintiff's ability to participate in athletic, extracurricular,

and educational activities, or to attain a diploma has not and will not be impacted by the enforcement of the Rule. Instead, the activity at issue is an administrative function under the purview of the Defendants, and through them, the school district. *See* 70 O.S. § 24-114(B). Because there is no education program or activity in the allegations, Plaintiff has failed to show the requisite exclusion required to sustain a plausible claim under Title IX.

> **b)** **Plaintiff was not discriminated against on the basis of sex.**

Plaintiff student's Title IX claim also fails to show discrimination on the basis of sex. Plaintiff does not allege any facts which tend to prove that the Rule is discriminatory—facially or otherwise. The Rule does not include any facial classifications. The plain text reads: "School districts and local school sites are hereby prohibited from altering sex or gender designations in any prior year student records without authorization from the State Board of Education." OAC 210:10-1-24.

Lacking a facial claim of discrimination, Plaintiff relies on disparate impact theory. Plaintiff cannot survive a motion to dismiss by merely asserting that theory, though. "Conclusory allegations of differential treatment are not sufficient to plausibly state a claim of sex-based discrimination." *Kelley v. Iowa State Univ. of Science and Technology*, 311 F. Supp. 3d 1051, 1067 (S.D. Iowa 2018) (citing *Wolfe v. Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860, 865 (8th Cir. 2011)). Instead, Plaintiff must plead facts supporting that legal conclusion.

Plaintiff cites *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731 (2020) to equate transgender status with sex in Title IX, mistaking the sex discrimination at issue in *Bostock* as a reference to all transgender status issues. Compl. ¶ 79. In analyzing whether the sex-based protections of Title VII prohibited employment discrimination against homosexual or

transgender individuals, the Court built its opinion on the foundational fact that "sex" referred "only to biological distinctions between male and female." *Id.* at 1739. *Bostock* then condemned sex stereotyping. *See id.* at 1740–41. Under that reasoning, permitting biological women but prohibiting a transgender woman (biological man) from wearing a dress would be discrimination on the basis of sex because the transgender female is a man, not a woman. *Bostock* condemns unwarranted disparities between biological men and women, but its sex stereotyping rationale does not give a green light to all transgender identity claims. Equating sex in Title IX with gender identity would simply ignore the rationale of *Bostock*.

*Bostock* is also inapplicable here because it expressly applies only to Title VII, not Title IX. *See Jackson*, 544 U.S. at 175 ("Title VII . . . is a vastly different statute from Title IX"); *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 808–11 (11th Cir. 2022) (en banc); *Meriwether v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021); *see also Gebser v. Lago Vista Independent Sch. Dist.*, 524 U.S. 274, 283 (1998) (noting the textual differences between Title VII and Title IX; rejecting the use of agency principles in the Title IX context). Title IX prohibits discrimination "on *the basis* of sex," 20 U.S.C. § 1681(a) (emphasis added), rather than "because of . . . sex," 42 U.S.C. § 2000e-2(a)(1). Indeed, the Court was careful to cabin off its decision. *Bostock*, 140 S. Ct. at 1753. Because of the Court-imposed limit on the applicability of *Bostock*, the word "sex" in the context of Title IX must necessarily be interpreted here.

In 1972, the year Title IX was enacted, the legislative history and ordinary public meaning of the word "sex" confirms it excludes subjective gender identity or transgender status. *See Bridge on behalf of Bridge v. Okla. State Dept. of Educ.*, --- F. Supp. 3d ----, 2024 WL 150598, at *8 (W.D. Okla. 2024) ("At the time Title IX was enacted, the ordinary public

meaning of 'sex' was understood to mean the biological, anatomical, and reproductive differences between male and female."); *Bostock*, 140 S. Ct. at 1738 ("This Court normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment."). Ordinary meaning can be determined by looking at dictionaries in existence around the time of enactment. *See In re Mallo*, 774 F.3d 1313, 1321 (10th Cir. 2014) ("Dictionary definitions are useful touchstones to determine the 'ordinary meaning' of an undefined statutory term.").

During the relevant time, "sex" carried a "narrow, traditional interpretation." *Ulane v. E. Airlines, Inc.*, 742 F.2d 1081, 1085-86 (7th Cir. 1984). Indeed, "virtually every dictionary definition of 'sex' referred to the *physiological* distinctions between males and females." *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 632–33 (4th Cir. 2020) (Niemeyer, J. dissenting) (emphasis in original) (collecting dictionary definitions); *see also The Oxford English Dictionary* 578 (1961) ("[t]he sum of those differences in the structure and function of the reproductive organs on the ground of which beings are distinguished as male and female, and of the other physiological differences consequent on these"); *The American College Dictionary* 1109 (1970) ("the sum of the anatomical and physiological differences with reference to which the male and the female are distinguished . . ."); *The Random House College Dictionary* 1206 (rev. ed. 1973) ("either the male or female division of a species, esp. as differentiated with reference to the reproductive functions"); *The American Heritage Dictionary* 1187 (1976) ("[t]he property or quality by which organisms are classified according to their reproductive functions"); *Webster's New College Dictionary* 1054 (1979) ("the sum of the structural, functional, and behavioral characteristics of living beings that subserve reproduction by two interacting parents and that

distinguish males and females"); *The Random House College Dictionary* 1206 (rev. ed. 1980) ("either male or female division of a species, esp. as differentiated with reference to the reproductive functions"); *The American Heritage Dictionary of the English Language* 1187 (1980) ("two divisions" of organisms, "designated male and female," classified "according to their reproductive functions").

The purpose of Title IX, initially introduced as the Women's Equality Act of 1971, likewise establishes that the ordinary understanding of "sex" was biological. *See* Paul C. Sweeny, *Abuse Misuse & Abrogation of the Use of Legislative History: Title IX & Peer Sexual Harassment*, 66 UMKC L. Rev. 41, 54 (1997). Senator Bayh, who introduced the legislation, explained the Act's goal as to "eradicate the pervasive, divisive, and unwarranted discrimination against a majority of our citizens, *the women of this country*. *Id.* (emphasis added and citation omitted). He continued, stating, "What we are trying to do is provide equal access for *women and men* students to the educational process and the extracurricular activities in a school, where there is not a unique facet such as football involved. *Id.* at 59 (select emphasis omitted) (citing 117 Cong. Rec. 30399, 20406 (1971)).

The statutory context of the law also confirms that Title IX's reference to "sex" was limited to biological sex. Throughout Title IX there is a presumption of, and reliance on, the duality of sex. *See, e.g.*, 20 U.S.C. §§ 1681(a)(2), 1681(a)(8). If "sex" encompasses gender identity, then the law would be rendered meaningless and unworkable.

The one circuit court to find a right to edit school records was reviewing *current* enrollment records in a state that *permitted* changes to birth certificate, both of which are not at issue in this case. In *Grimm*, the Fourth Circuit held that the Board's refusal to update

Grimm's school records to match his gender identity violated Title IX. *See Grimm*, 972 F.3d at 619. However, the court determined that Grimm would suffer harm because the sex marker on his transcript would not match his "other documentation" when he applied to colleges. *Id.* But this is not the case here. First, currently under Oklahoma law, Plaintiff cannot change Plaintiff's birth certificate to match Plaintiff's gender identity. *See Fowler*, 2023 WL 4010694 (upholding Oklahoma's policy of refusing to amend birth certificates to match gender identity as constitutional). Second, the inclusion of a student's sex on a school transcript is not required by law. *See* 70 O.S. § 24-114(C). So, the "harm" perceived by the Fourth Circuit in *Grimm* is not present in this case.

In sum, the Rule does not impact Plaintiff's ability to participate in an education program or activity. And the Rule requires every school district to follow the same neutral procedures regardless of the requesting student. Because Plaintiffs fail to plead facts needed for either required element of a Title IX claim, this Court should dismiss Count 6.

### 4.    Maintaining accurate records is not discrimination under Equal Protection. (Count 7)

Plaintiffs' claim that the Rule violates the Equal Protection Clause cannot survive as a matter of law. *See* Compl. ¶¶ 80-84. Plaintiffs fail to plead any set of facts upon which this Court could conclude the Rule intentionally discriminates against any class, based on sex or otherwise. Moreover, courts have rightly rejected gender identity as a suspect class.

Although the Equal Protection Clause of the Fourteenth Amendment generally directs that "all persons similarly situated should be treated alike[,]" it "doesn't guarantee equal results for all, or suggest that the law may never draw distinctions between persons in meaningful dissimilar situations." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985);

*SECSYS, LLC v. Vigil*, 666 F.3d 678, 684 (10th Cir. 2012). The Equal Protection Clause "does not forbid classifications," nor does it create substantive rights. *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 54 (10th Cir. 2013) (citation omitted); *see also Teigan v. Renfrow*, 511 F.3d 1072, 1083 (10th Cir. 2007). Consequently, "[u]nless a legislative classification or distinction burdens a fundamental right or targets a suspect class, courts will uphold it if it is rationally related to a legitimate end." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998).

To establish an Equal Protection Clause violation, a plaintiff must first establish "the challenged state action intentionally discriminates between groups of persons." *SECSYS*, 666 F.3d at 685. When the law is generally applicable, the plaintiff bears the burden of establishing "'the existence of purposeful discrimination' causing an adverse effect." *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021) (citing *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)). Disparate impact alone is insufficient to establish intentional or purposeful discrimination, "because many laws, perhaps most and often unavoidably, affect some groups of persons differently than others . . . ." *SECSYS*, 666 F.3d at 685.

Once a plaintiff overcomes this threshold burden, he or she must establish the state's intentional discrimination is not "justified by reference to some upright governmental purpose." *Id.* at 686. Here, courts presume the relevant legislation is "valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne, Tex.*, 473 U.S. at 440. Only when a plaintiff establishes the intentional discrimination targets a fundamental right or a suspect classification does a heightened standard of review apply. *Id.*

17

a)   **Plaintiff fails to allege facts establishing the Rule**
**purposefully discriminates between two groups of people.**

The Rule contains no facial classification. *See* OAC 210:10-1-24. It provides a uniform process generally applicable to all individuals. *Id.* The prohibition on "altering sex or gender designations in any prior year student records without authorization from the State Board of Education" applies equally to all school district and local school sites. *Id.* 210:10-1-24(a).

Given the absence of any distinction between groups of people on the face of the Rule, "no presumption of intentional discrimination arises; proof is required." *SECSYS*, 666 F.3d at 685. The Complaint fails this burden because it lacks any factual assertion that plausibly establishes a disparate impact on a class of persons—men, women, or even transgender individuals—let alone that the Board intentionally discriminated against that class of persons as a facial matter.

In Plaintiff's view, a law that prohibits sex or gender amendments to past school records discriminates against people who want updates. This reasoning is flawed. A law impacting a group of individuals does not convert that group into a protected class.

Indeed, Plaintiffs' theory of equal protection would refashion almost every neutral law as facially discriminatory. Every law limiting or prohibiting a behavior will impact those who wish to participate in the same, but impact is not a magic wand that conjures facial discrimination. *Cf. Washington v. Davis*, 426 U.S. 229, 239 (1976) (explaining that a law is not "unconstitutional [s]olely because it has a . . . disproportionate impact"). Under Plaintiffs' theory of equal protection, the law against swimming in Lake Hefner is discriminatory against people who can swim. After all, non-swimmers would not be impacted by that law. The Lake Hefner example reveals the flawed reasoning: the existence of people experiencing greater

impact from the law does not morph a neutral law into a discriminatory one. A transgender student, any more than a swimmer, is not entitled to a special exemption from a neutral law. To hold otherwise would be to establish a rule that almost all statutes are discriminatory.

Plaintiffs plead nothing besides this novel impact theory to make Plaintiffs' equal protection claim succeed. Plaintiffs do not allege facts to show, for example, that boys, girls, or transgender students as a class are being treated differently under the Rule.

### b) Plaintiffs fail to allege facts establishing the Rule purposefully discriminates against a suspect class.

Plaintiffs' equal protection claim also fails because transgender status is not a suspect class under the Equal Protection Clause. *See Etsitty v. Utah Transit Auth.*, 502 P.3d 1215, 1227-28 (10th Cir. 2007); *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995); *see Druley v. Patton*, 601 F. App'x 632, 635 (10th Cir. 2015); *Fowler*, 2023 WL 4010694, at *21; *Lee v. Poudre Sch. Dist.*, No. 23CV1117, 2023 WL 8780860, at *17 (D. Colo. 2023). Plaintiffs are preserving an argument that some district courts believe may succeed with the en banc Tenth Circuit. *See, e.g.*, *Griffith v. El Paso Cnty., Colorado*, No. 21CV387, 2023 WL 2242503, at *10 (D. Colo. Feb. 27, 2023), *report and recommendation adopted,* 2023 WL 3099625 (D. Colo. Mar. 27, 2023). Unless and until the Tenth Circuit revisits that precedent, though, its published opinions remain binding on this court. *See id.; Fowler*, 2023 WL 4010694, at *21.

The existing Tenth Circuit precedent is also correct. As with the Title IX claim, the equal protection claim confuses the immutable characteristic of sex with the changeable characteristics of transgender status. Any conceivable equal protection theory based on transgender status rests upon a sex-based classification where gender identity is different from sex. *See, e.g.*, *Bostock*, 140 S. Ct. at 1747; *Tudor v. Se. Oklahoma State Univ.*, 13 F.4th 1019, 1028

(10th Cir. 2021). Plaintiffs' desire to invoke sex discrimination by relying on transgender status is also Plaintiffs' undoing; it would require a swap of objective sex for gender identity, destroying the sex-based classification that is at the heart of many modern cases.

Long before *Bostock*, "sex, like race and national origin" was recognized by the Supreme Court as "an immutable characteristic." *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973). "Physical differences between men and women . . . are enduring . . . ." *United States v. Virginia*, 518 U.S. 515, 533 (1996). As a result, the Supreme Court has explained: "[t]o fail to acknowledge even our most basic biological differences—such as the fact that a mother must be present at birth but the father need not be—risks making the guarantee of equal protection superficial, and so disserving it." *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 73 (2001). Specifically, men and women are distinct, and "the principle of equal protection does not forbid Congress to address" problems in a way specific to each sex. *Id.*

Indeed, the Equal Protection Clause does not aim to eliminate "dispositive realities" of sex, only assumptions, stereotypes, and generalizations about men or women. *Virginia*, 518 U.S. at 549-50; *see also Michael M. v. Superior Ct. of Sonoma Cnty.*, 450 U.S. 464, 469 (1981) ("Underlying these decisions is the principle that a legislature may not 'make broad overgeneralizations based on sex which are entirely unrelated to any differences between men and women or which demean the ability or social status of the affected class.'" (citation omitted)). "'Inherent differences' between men and women, we have come to appreciate, remain cause for celebration . . . ." *Virginia*, 518 U.S. at 533. Accordingly, the Supreme Court has declined to adopt strict scrutiny to evaluate sex classifications, not hesitating to uphold sex classifications "used to compensate women 'for particular economic disabilities [they have]

suffered,' . . . to 'promot[e] equal employment opportunity,' . . . 'to advance full development of the talent and capacities of our Nation's people.'" *Id.* (internal citations omitted). *Bostock* reiterated that sex stereotyping in the workplace is impermissible by maintaining that birth sex is an identifiable concept separate from gender identity. 140 S. Ct. at 1746-47.

As shown, the understanding of the distinction between the sexes is deeply rooted in equal protection precedent. Only by recognizing this distinction could the Supreme Court strike down stereotypical and invidious sex discrimination and safeguard the rights of women. *See, e.g.*, *Michael M.*, 450 U.S. at 469 ("[T]his Court has consistently upheld statutes where the gender classification is not invidious, but rather realistically reflects the fact that the sexes are not similarly situated in certain circumstances.").

Because subjective gender identity or transgender status is not a suspect class, and because application of the Rule does not rely on any sex-based discrimination, Plaintiffs fail to establish that the Rule purposefully discriminates against anyone, let alone a suspect class.[6]

c) **The Rule survives rational basis review.**

The Court need not reach the question of state interests on a facially neutral law. Nevertheless, if the Court adopts the Plaintiffs' theory, any "classification" in denying amendments in past student records must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Carney v. Okla. Dept. of*

---

[6] The few quotes in the Complaint from Board meetings simply restate the argument herein, that gender identity is not biological sex. Compl. ¶¶ 31, 33. The statements of individual Board members, especially those that predate the Rule, are not evidence of the motive of the Board itself in passing the Rule. *See Citizens for Const. Integrity v. United States*, 57 F.4th 750, 768 (10th Cir. 2023) (quoting *United States v. O'Brien*, 391 U.S. 367, 384 (1968)). But recognizing concepts that are true, as a matter of law and fact, is also not evidence of discrimination.

*Pub. Safety*, 875 F.3d 1347, 1353 (10th Cir. 2017) (citing *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). Under rational basis review, courts do not sit "to judge the wisdom, fairness, or logic of legislative choices." *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993) (citation omitted). A state need only articulate some "conceivable basis" supporting the law, "whether or not the basis has a foundation in the record." *Id.* at 320–21.

Here, the Rule does not purport to keep students from updating their current or future student records. The mandate of the Rule is clear—school districts must attain "authorization from the State Board of Education" before "altering sex or gender designations in any prior year student records." OAC 210:10-1-24. The State has an interest in maintaining the accuracy of historical records as they pertain to individual students and school districts. Not only would updating past records create an administrative burden, but also institutions in receipt of federal funds must address the use of statistical evidence with respect to percentages of persons of each sex and how it may be considered in a Title IX hearing or proceeding. 20 U.S.C. § 1681(c). The Rule helps protect and maintain the validity of Title IX claims. For instance, if students can reach back and amend their student records to display a different sex than the one they were enrolled in for that year, the ability to review statistical imbalances (or manufacture ones retroactively) becomes an issue for Title IX compliance.

The Oklahoma Legislature has also enacted many laws that demonstrate its desire to understand and protect the valuable differences between men and women, both inside and outside schools. Like student records, individuals are prohibited from amending their birth certificates under 63 O.S. § 1-321. *See Fowler*, 2023 WL 4010694. The "Save Women's Sports Act" prohibits biological males from competing on athletic teams designated for biological

females. 70 O.S. § 27-106. Students are also required by Oklahoma law to use the bathrooms assigned to their biological sex. 70 O.S. § 1-125; *see Bridge*, 2024 WL 150598. Because the Legislature is seeking to understand and monitoring how Oklahoma schools handle sexuality and track identity relative to biological sex, the accurate retention of student records by the Department is vital to achieving the Legislature's goal.

The Court need not reach these considerations because Plaintiffs' equal protection claim cannot stand against a facially neutral law. But even under Plaintiffs' theory, the "classification" is rational. Accordingly, this Court should dismiss Count 7.

### C.    The claim for damages should be dismissed.

Beyond seeking injunctive relief regarding a rule, Plaintiffs also improperly seek damages in this case. Qualified immunity bars individual capacity damages, and sovereign immunity bars official capacity damages.

### 1.    The individual capacity defendants are entitled to qualified immunity.

Plaintiffs cannot show the violation of any right, much less a clearly established right, that would permit a claim for individual liability here. Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). "When this defense is raised, officials enjoy a presumption of immunity." *Castanon*, 402 F. Supp. 3d at 1249 (citing *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017)). "A plaintiff can overcome this presumption of immunity only by carrying the heavy burden of showing both that (1) the defendant-officer in question violated one of his [statutory or] constitutional rights, and (2) the infringed right at issue was clearly established at the time of

the allegedly unlawful activity...." *Id.* (quoting *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011)).

The court may address either qualified immunity prong first, but "constitutional avoidance considerations generally counsel" addressing the second prong at the start. *Id.* (citing *Kerns*, 663 F.3d at 1181). "A right is clearly established when a reasonable official would have understood that what he or she was doing violated that right." *Id.* at 1250 (citing *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964-65 (10th Cir. 2016)). "Plaintiffs must identify clearly established law that would have notified Defendants that their actions were unlawful." *Id.* (citing *Washington v. Unified Gov't of Wyandotte Cty.*, 847 F.3d 1192, 1202 n.3 (10th Cir. 2017)). "[P]laintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Callahan v. Unified Gov't of Wyandotte Cty.*, 806 F.3d 1022, 1027 (10th Cir. 2015).

Plaintiffs cannot meet that burden here. Defendants discussed and voted on the rule in a public board meeting where they were advised by counsel in public of the legality of the rule.[7] Defendants were advised that the rule aligns state policy on student records with state policy on birth certificates.[8] Defendants were also advised by counsel in September 2023 to pass the rule to prevent Moore and similarly situated schools from altering prior year school records, which is why they were able to deny the change request in Moore without need for much further deliberation in October 2023.[9]

---

[7] Meeting, *Oklahoma State Department of Education*, FACEBOOK (Sept. 28, 2023), at 3:14:14, https://www.facebook.com/OklaSDE/videos/836443861282370/.
[8] *Id.* at 3:20:52.
[9] Meeting, *Oklahoma State Department of Education*, FACEBOOK (Oct. 26, 2023), at 2:45:16, https://www.facebook.com/OklaSDE/videos/1051275442964112/.

The advice of counsel also aligns with existing jurisprudence in Oklahoma federal courts on state records. Just recently, the Northern District of Oklahoma published an opinion upholding the state's policy preventing sex changes in birth certificates. *Fowler*, 2023 WL 4010694, at *8. *Fowler* provides state officials with a legal basis for believing they can maintain accurate records of sex in prior years. No authority supports the proposition that a right denied in published case law is clearly established.

There is also no violation of any right, as explained earlier. *See* Parts II.A–II.C. Nevertheless, even if the Court found a potential violation, it should find qualified immunity for the individual capacity Defendants because they acted on the public advice of counsel and in line with existing case law in Oklahoma federal courts. No reasonable official would have thought that they were violating a right when following advice of counsel and case law.

### 2. The official capacity defendants are immune from damages.

The official capacity Defendants seek dismissal of the damages claim against them. Sovereign immunity bars relief other than prospective injunctive relief against state officials in their official capacity. *See Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 911 (10th Cir. 2008). Despite this rule, the Complaint pleads damages against all Defendants without distinction. *See* Compl. ¶ E. Based on the naming of individual capacity Defendants, the issue might just be a pleading error. Nevertheless, because of the lack of tailoring on that claim, official capacity Defendants raise their sovereign immunity against damages.

## III.   CONCLUSION

This Court should dismiss the complaint for lack of standing, for failure to state a claim, and for immunity from damages.

Respectfully Submitted,

s/ Bryan Cleveland
Bryan Cleveland, OBA #33860
  General Counsel
Erin E. Smith, OBA #35232
Nathan Downey, OBA #35587*
  Assistant General Counsel

Oklahoma State Department of Education
2500 North Lincoln Boulevard
Oklahoma City, OK 73105
(405) 521-6295
bryan.cleveland@sde.ok.gov
erin.smith@sde.ok.gov
nathan.downey@sde.ok.gov
*Admission application forthcoming

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2024, I mailed, with proper U.S. postage prepaid, a true and correct copy of the above and foregoing instrument to the following:

Leslie Briggs, OBA #33845
Colleen McCarty, OBA #34410
Oklahoma Appleseed Center for Law and Justice, Inc.
110 S. Hartford Ave., Suite 1008
Tulsa, OK 74120

Joshua Payton, OBA #34440
Oklahoma Equality Law Center
320 S. Boston Ave., Suite 1026
Tulsa, OK 74103

s/ Bryan Cleveland
Bryan Cleveland