IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| [1] J. Doe, a minor child, by and through their mother, Jane Doe,<br><br>Plaintiffs,<br><br>v.<br><br>[1] Ryan Walters, in his official capacity as State Superintendent of Public Instruction and Chair of the Oklahoma State Board of Education,<br><br>[2] Don Burdick,<br>[3] Sarah Lepak,<br>[4] Kendra Wesson,<br>[5] Katie Quebedeaux,<br>[6] Zachary Archer, in their official capacities as members of the Oklahoma State Board of Education<br><br>and<br><br>[7] The Oklahoma State Department of Education, a state executive agency,<br><br>Defendants. | Case No. 24-cv-24-R<br><br>Hon. Judge Russell |

## **PLAINTIFFS' FIRST AMENDED COMPLAINT**

COME NOW, the Plaintiffs, by and through their attorneys of record and, pursuant to Fed. R. Civ. P. 15(a)(1), hereby amend as a matter of course their Complaint against Defendants Ryan Walters, Don Burdick, Sarah Lepak, Kendra Wesson, Katie Quebedeaux, and Zachary Archer in their official capacities and the Oklahoma State

1

Department of Education, a state executive agency (collectively, "Defendants"). For their causes of action, Plaintiffs respectfully submit the following:

PARTIES, JURISDICTION, AND VENUE

1. This action is brought pursuant to the Oklahoma Administrative Procedures Act, 75 O.S. § 250, *et seq*. and the Due Process clause of Art. II, §7 of the Oklahoma Constitution.

2. Plaintiff J. Doe (alternatively referred to as "Minor Plaintiff Doe") is a public school student who resides in Oklahoma and is transgender. Plaintiff J. Doe received a court order from an Cleveland County District Court granting them a gender marker change and was subsequently arbitrarily and capriciously denied the ability to change school records reflecting their correct gender marker by Defendants. Plaintiff J. Doe is a minor and brings this action by and through their mother and legal guardian, Jane Doe. Minor Plaintiff Doe filed, concurrently to this Petition, a motion to proceed under pseudonym and for a protective order, which was granted by the United States District Court for the Western District of Oklahoma on February 12, 2024. Dkt. 11.

3. Plaintiff Jane Doe is J. Doe's mother and legal guardian and brings this action on behalf of her child, J. Doe.

4. Defendant Ryan Walters is the Superintendent of Public Instruction for the Oklahoma Department of Education (the "Department"). He controls and directs the Department and also serves as a member and chairperson of the State Board of

2

Education (the "Board") with all the rights and privileges thereof. Okla. Stat. tit. 70 §§ 1-105(C), 3-107.1. The State Superintendent "adopts policies and makes rules for the organization, operation, and administration" of the Department. Okla. Stat. tit. 70, § 3-107.1(2). The State Superintendent is also "responsible for interpretation of policy and rules set by [the Board]." Okla. State. Tit. 70 § 3-107.1(6). The State Superintendent's "control" extends to any "other operations necessary to carry out the powers, duties and functions of the State." § 3-107.1(3). Defendant Walters falls under the definition of "Administrative Head" under Okla. Stat. tit. 70 § 250.3 (1).

5. Defendant Donald Burdick is the appointed member of the Board for District 1.
6. Defendant Sarah Lepak is the appointed member of the Board for District 2.
7. Defendant Kendra Wesson is an appointed member of the Board and is listed on the Oklahoma State Department of Education website as the appointee for District 4.
8. Defendant Katie Quebedeaux is an appointed member of the Board and is also listed on the Oklahoma State Department of Education website as the appointee for District 4.
9. Defendant Zachary Archer is the appointed at-large member of the Board.
10. Defendants Walters, Burdick, Lepak, Wasson, Quebedeaux, and Archer (collectively, "Official Capacity Defendants") are all currently serving board members. They are sued in their official capacities for equitable relief. At all relevant times, the Official Capacity Defendants acted and continue to act under color of state law.

11. This action is also brought against Defendant Walters in his official capacity as the State Superintendent of the Department.

12. Defendant Oklahoma State Department of Education (the "Department") is charged with determining the policies and directing the administration and supervision of the public school system of Oklahoma. Okla. Stat. tit. 70, § 1-105(A).

13. This Court has jurisdiction as a court of general jurisdiction. "The District Court shall have unlimited original jurisdiction of all justiciable matters." Art. II, § 7 of the Oklahoma Constitution.[1]

14. Venue is proper in this Court pursuant to Okla. Stat. tit. 75 § 306.

15. The Court is authorized to grant declaratory and injunctive relief pursuant to Okla. Stat. Ann. tit. 12, §1651, and Okla. Stat. Ann. tit. 75, § 306.

## FACTS

16. Minor Plaintiff J. Doe is a student in Moore Public Schools located in Moore, Oklahoma.

17. In February 2023, Minor Plaintiff Doe received a court order granting them a gender marker change and ordering Doe's school district to update all records to their correct gender marker.

---

[1] Plaintiff's First Amended Complaint (FAC) has been filed concurrently with Plaintiff's Motion to Remand and Brief in Support. The FAC has been amended to dismiss the Federal claims brought by Plaintiff. As a result, Plaintiff has left the original jurisdictional allegations unaltered given the likelihood of remand.

18. During the proceedings, Minor Plaintiff Doe sought and was granted a waiver of the publication requirement pursuant to Okla. Stat. 12 § 1633(B) for good cause shown due to the highly intimate and private nature of J. Doe's gender transition.

19. Plaintiff Jane Doe subsequently notified J. Doe's school district, Moore Public Schools, of the court order requiring the change in gender marker to their records.

20. In Fall 2023, Moore Public Schools alerted the Board of the court order.

21. On September 28, 2023, after receipt of the court order by the Department, Defendant Walters proposed a new emergency rule to the Board, listed as OAC 210:10-1-24 (the Rule), which states as follows:

> **210:10-1-24. Student records**
>
> (a) School districts and local school sites are hereby prohibited from altering sex or gender designations in any prior year student records without authorization from the State Board of Education.
> (b) Any authorization provided under subsection (a) must specify to the particular record at issue.
>
> (c) School districts must promptly inform the State Board of Education of any pending litigation or any court order related to altering sex or gender designations in school records within their district.
> (d) Notices that ensure compliance with subsection (b) are considered timely filed if provided to the Executive Secretary of the State Board within 14 calendar days of the school district's knowledge of litigation or of a Court order.

22. The Board unanimously adopted the Rule on the same date, acting under color of law.

23. One month later, on October 26, 2023, the Board considered two requests for changes to gender designations on school records from Moore Public Schools on behalf of Plaintiff J. Doe and another from a student who is not a party to this matter.

24. The Board unanimously voted to deny the gender marker designation changes in Plaintiff's school records, despite an Oklahoma District Court order mandating the same.

25. Without updated records, Minor Plaintiff Doe will be forced to reveal their transgender status at every conceivable institution where the affected school records are required, including but not limited to: applying to college or vocational school, applying for certain jobs and certifications, among others.

26. Currently, Plaintiff J. Doe is not publicly out as transgender in the community. J. Doe's coworkers do not know plaintiff is transgender, nor do his teachers or classmates.

27. Following the vote to adopt the emergency rules in September 2023, general counsel to the Board, Bryan Cleveland, gave the press the details necessary to identify the student through their court proceedings, recklessly and maliciously revealing the student's identity to members of the media who were present.

28. Counsel for Plaintiff immediately sought to seal Plaintiff's name change proceeding to protect the minor child's identity. Due to Cleveland's reckless and malicious conduct, the request to seal the name change proceedings was granted on October 16, 2023.

29. Defendant Walters' motivations for the Rule and subsequent denial are well known as a result of his many media appearances during which he reliably denigrates transgender children. During and after the October 26th meeting, Walters stated, among other comments about transgender students:

> "You can't change truth, you can't change reality. So if it says — if you're a gender, that is the gender that you are. You can't go back and change your birth certificate. So we've got to stand for truth and reality in society."[2]

> "We don't need to be going back and correcting records based on transgender ideology. We have two genders. Those are the genders that are set[.]"[3]

30. The Rule was proffered and adopted as a direct response to Plaintiffs' request to correct the inaccurate gender marker in their school records.

31. Defendants' actions serve no government interest, instead, they are simply a means to harass, intimidate, humiliate, and discriminate against transgender students. The Board and its individual members frequently express their overt contempt for the rights of transgender students through relentless public commentary in meetings and

---

[2] Bennett Brinkman, "State Board of Education Hears TPS Update, Approves Budget Request and Gender Rules," NONDOC, (Sept. 28, 2023). https://nondoc.com/2023/09/28/state-board-of-education-hears-tps-update-approves-budget-request-and-gender-rule/

[3] Jason Burger, "Advocates worry for transgender students after State Board of Education denies requests to change gender designation," KOCO (Oct. 27, 2023). https://www.koco.com/article/oklahoma-advocates-transgender-board-of-education-denies-requests-gender-designation/45659152#:~:text=on%20student%20records-,%22We%20don%27t%20need%20to%20be%20going%20back%20and%20correcting,issue%20being%20thrust%20upon%20kids.

to the media, often refusing to acknowledge the very existence of transgender people. Their malicious intent to discriminate against transgender children has been well documented by their own public comments.

    a. "You have chosen radicals over your students, ideology over biology, and 'wokeness' over safety" - Ryan Walters, Letter to Stillwater Public Schools, April 8, 2022.[4]

    b. "This is an incredibly misguided and stupid escalation by the radical agenda by Biden. The Biden Administration will stop at nothing to destroy our families and endanger girls in every school. This insanity stops here." - Ryan Walters on President Biden's Proposed Change to its Title IX Regulations on Students' Eligibility for Athletic Teams.[5]

    c. "This was a legitimate faculty meeting where the counselors and administrators were talking to the staff — are you ready? — about whether they should allow litter boxes in the bathrooms for kids that identify as cats." - Ryan Walters, advancing a debunked transphobic myth that schools were using litter boxes for children identifying as cats.[6]

---

[4] Letter from Ryan Walters to the Stillwater School Board, undated. https://bloximages.chicago2.vip.townnews.com/stwnewspress.com/content/tncms/assets/v3/editorial/3/be/3be8f7f0-b775-11ec-895c-2f9595273fc2/62509242e4388.pdf.pdf

[5] Kaylee Douglas, "OK Superintendent Walters threatens lawsuit over Biden trans athlete proposal," KFOR News, (Apr. 7, 2023). https://kfor.com/news/oklahoma-legislature/ok-superintendent-walters-threatens-lawsuit-over-biden-trans-athlete-proposal/

[6] "Ryan Walters now spreading 'Litter Box in School' hoax" The Lost Ogle (video of Ryan Walters speech), (Nov. 2, 2022). https://thelostogle.com/2022/11/02/ryan-walters-now-spreading-litter-box-in-school-hoax

d. "This is an absolute assault on our classrooms, on our kids' minds, on Christianity. This is an assault on faith. What they want is for kids to go home and tell their moms and dads 'we should be able to change our gender, we should be able to talk about transgenderism' … so this is a war on parents, kids, and faith." - Ryan Walters media appearance, September 9, 2023.[7]

e. "… This is just — it goes against objective truth and reality. It is observed and recorded at birth. So to say that it can just be taken out of your record just is not consistent with what we are biologically as a binary species." - Suzanne Reynolds, Former Member At-Large, Oklahoma State Board of Education Meeting, September 28, 2023.[8]

32. The comments from Defendant Walters and Former Member At-Large Reynolds demonstrate clear malicious intent to discriminate against transgender students.

33. The other Board members never questioned the intentional discrimination of the Rule but have adopted and endorsed the discriminatory reasoning put forth by Defendant Walters. Not a single board member asked a question at the September 28th meeting. No evidence was heard.

---

[7] Just the News, "Ryan Walters talks about the origins of teachers pushing drag shows and transgenderism on kids" (Sept. 9, 2023). https://justthenews.com/videos/ryan-walters-talks-about-origins-teachers-pushing-drag-shows-and-transgenderism-kids

[8] Tres Savage, Michael McNutt, & Bennett Brinkman, "Roundup: Judges face judgment, internet projects pending, ODVA 'shall' charge fees for open records," NONDOC, (Oct. 17, 2023). https://nondoc.com/2023/10/17/roundup-judges-broadband-odva-open-records-fees/

34. The Board's failure to take evidence and inquire about the situation, coupled with Defendant Walters overt discriminatory intent constitute an arbitrary and capricious agency action under OAPA.
35. There is no circumstance in which any other student with different sex or gender characteristics would be required to request a gender marker update to their school records through the Board, other than a possible scrivener's error. There is no circumstance in which such a request by any other student with different sex or gender characteristics would be denied.
36. In fact, Defendant Walters has stated he "could not forsee any scenario where the board would grant such a request from a school district."[9]
37. As a result of the inherent imbalance in circumstances giving rise to the need to request a gender marker change to school records, the Board's Rule and its enforcement has had and will continue to have an arbitrary and capricious effect on transgender students absent the relief requested herein.
38. The Board also lacked rulemaking authority to promulgate the Rule. Specifically, the Oklahoma Constitution identifies the Legislature as the lawmaking authority of the State. Okla. Const. Art. V, §1. The Legislature may delegate some rulemaking

---

[9] Linsey Kriehbel Burton and Andrea Eager, "State board denies requests to change student gender records despite court orders" (Oct. 26, 2023) https://tulsaworld.com/news/state-regional/education/state-board-denies-requests-to-change-student-gender-records-despite-court-orders/article_e39a8840-743b-11ee-88b5-5f1d0ff7ca4f.html

authority to executive branch agencies to implement statutorily mandated policies. *Tulsa Cnty. Deputy Sheriff's Fraternal Ord. of Police, Lodge Number 180 v. Board of Cnty. Comm'rs*, 995 P.2d 1124,1128 (Okla. Sup. Ct. 2000); I*n re Initiative Petition No. 300, State Question No. 689*, 46 P.3d 123 (Okla. Sup. Ct. 2002); 57 O.S. § 250.2; 3 Okla. Att'y. Gen. Op. 2023. However, an agency may only exercise the powers ``expressly given by statute," as well as those "necessary for the due and efficient exercise of the powers expressly granted, or such as may be fairly implied from the statute granting the express powers." 3 Okla. Att'y. Gen. Op. 2023 (citing *Marley v. Cannon*, 618 P.2d 401, 405 (Okla. Sup. Ct. 1980)). An agency "cannot expand those powers by its own authority" and to do so "*lacks any safeguards to limit political opportunism.*" *Id*. (emphasis added).

39. On the Board's September 28, 2023 meeting agenda, general counsel to the Board Bryan Cleveland cited Okla. Stat. Ann. tit. 70 §24-114 as the statutory authority giving the Board rulemaking authority for the purposes of adopting OAC 210:10-1-24.

40. §24-114 does not confer rulemaking authority over gender marker designations in school records to the Board. The only passage referencing the Board's rulemaking authority regarding records states:

> "The State Board of Education shall promulgate rules *regarding notification to parents or guardians of a student or the student if he or she is eighteen (18) years of age or older of destruction of the records*."
>
> Okla. Stat. Ann. tit. 70 §24-114(D) (emphasis added).

41. Nothing in the plain language of the statute authorizes the Board to adopt rules requiring its approval before a court order mandating changes to gender designations in school records is implemented by an individual school district.

42. At the December 18, 2023 public comment hearing for the permanent Rule, the Board's General Counsel Brian Cleveland invoked the statutory authority for the Rule as Okla. Stat. Ann. tit. 70 §24-114(B) which states:

    "School districts may store all documents and information in student records either electronically or in paper format, and either in a single- or multiple-file format. Records shall be stored, backed up and secured in accordance with standards and protocol developed by the State Board of Education.

43. Nothing in the plain language of this subsection confers *any* rule making authority to the Board.

44. The Board further violated Plaintiff's procedural due process rights under the Oklahoma Constitution Art. II, §7 and the Oklahoma Administrative Procedures Act (OAPA)

45. OAPA mandates minimum process is required for actions taken against individuals pursuant to agency rules. "Opportunity shall be afforded all parties to respond and present evidence and argument on all issues involved." Okla. Stat. Ann. tit. 75 §309(C).

46. No such notice or opportunity to be heard was given here.

47. Minor Plaintiff Doe also has a liberty interest in maintaining privacy over their gender identity by protecting their gender transition from disclosure absent their

consent, something which cannot be achieved by having historical records reflecting their incorrect gender marker. *Whalen v. Roe*, 429 U.S. 589 (1977).

48. Minor Plaintiff Doe is entitled to procedural due process before the government deprives him of his fundamental rights. Okla. Const. Art. II, §7.

49. Plaintiffs were given no such notice or opportunity to respond or present evidence and argument. In fact, Plaintiffs learned of the hearing as it was unfolding. The Board did not even entertain discussion on the issue after Defendant Walters publicly confirmed with Bryan Cleveland that he should vote "no" on the request to change Plaintiff's gender designations.

50. Defendants engaged in no discussion, heard no evidence, and did not allow Plaintiff to present any argument. The Board's vote was arbitrary and capricious and is thus null and void. *Montes v. State ex rel. Oklahoma Dep't of Hum. Servs.*, 445 P.3d 245 (Okla. Civ. App. 2019).

51. Defendants have provided no pre or post-deprivation process to remedy Plaintiffs' deprivations.

52. On December 18th, 2023, the Board held the required public hearing as part of the process of making the Rule permanent. The Rule was subsequently adopted during the January 25, 2024 meeting.

53. Defendants' conduct was intentionally arbitrary and capricious, deliberate, and malicious.

54. Plaintiff has suffered damages as a result of Defendants' actions in the form of mental and emotional distress, personal expenses, and attorney fees and costs.

## CAUSES OF ACTION

55. All paragraphs of this Petition are incorporated into each of the following causes of action.

### Count 1 - Violations of the Oklahoma Administrative Procedures Act

56. Defendants violated The Oklahoma Administrative Procedures Act ("OAPA"), Okla. Stat. Ann. tit. 75 § 250, et seq. by adopting the Rule in the first instance. As noted herein, Defendants exceeded the scope of their rulemaking authority under Okla. Stat. Ann. tit. 70 § 24-114. See also 3 Atty. Gen. Op. 2023.

57. As a result of Defendants' lack of statutory authority to adopt the Rule, Plaintiff is entitled to judgment declaring the rule invalid and unenforceable. Okla. Stat. Ann. tit. 75 § 306.

58. OAPA also provides, in pertinent part: "[i]n an individual proceeding, all parties shall be afforded an opportunity for hearing after reasonable notice." Okla. Stat. Ann. tit. 75 § 309.

59. Defendants additionally violated OAPA by enforcing an invalid rule in an arbitrary and capricious manner, without opportunity for a hearing and after providing no notice to the Plaintiff.

60. Plaintiff is entitled to judicial review of the order denying them the right to update their school records. Okla. Stat. Ann. tit. 75 § 318.

61. Defendants' blatant disregard for even the most basic procedural due process rights of notice and opportunity for a hearing, the arbitrary and capricious manner in

which the hearing was conducted, the overt discriminatory intent of the Rule, and the inapplicable statutory authority relied upon as the basis for the Rule itself constitute grounds for reversal of the order from the Board. Okla. Stat. Ann. tit. 75 § 322.

## Count 3 - Violation of the Oklahoma State Constitution Procedural Due Process Clause

62. Art. II, §7 of Oklahoma's Constitution provides: "No person shall be deprived of life, liberty, or property, without due process of law." The government must provide notice of relevant hearings and the opportunity to be heard. *Dodds v. Ward*, 418 P.2d 629 (Okla. S. Ct. 1966).

63. Plaintiff has a fundamental liberty interest in their privacy regarding disclosure of their personal information. The Fourteenth Amendment's Due Process Clause protects individuals from state intrusion into fundamental aspects of their personal privacy. See *Paul v. Davis*, 424 U.S. 693, 713 (1976). One such sphere of constitutionally-protected privacy is "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe*, 429 U.S. 589, 599 (1977).

64. The Board violated Plaintiffs' procedural due process rights by failing to provide them even the most basic notice or opportunity to be heard. *Dodds v. Ward*, 418 P.2d 629 (Okla. S. Ct. 1966). The Board did not give Plaintiff notice of the hearing and did not allow for the presentation of evidence or argument. There is no post-deprivation process.

65. As a result of the foregoing, Defendants have violated Plaintiffs' procedural due process rights secured by Art. II, §7 of Oklahoma's Constitution.

Count 4 - Temporary and Permanent Injunctive Relief

66. The State law claims asserted by Plaintiff herein are likely to prevail on the merits.

67. If Defendants are not temporarily and permanently enjoined, Plaintiff will continue to suffer irreparable harm in the form of ongoing violation of their State and Federal due process and other civil rights by arbitrarily and capriciously enforcing an invalid rule, as described herein, and continued, ongoing harm to the mental well-being of Plaintiff and in the form of inaccurate official government records which are used to identify Plaintiff. Such harms cannot be adequately addressed by money damages.

68. The balance of harm cuts in favor of Plaintiff, because the irreparable harm to their mental well-being caused by the intentional discriminatory intent of the rule, their inability to pursue vocations which require accurate school records, limitations upon their ability to submit school records to vocational schools, colleges, scholarship applications, among other programs requiring submission of school records, and their ongoing risk of exposure to teachers and administrators, all caused by failure to allow changes to Plaintiff's school records outweighs the burden a preliminary injunction will cause Defendants.

69. Public interest strongly supports granting injunctive relief. Not only will such relief benefit Plaintiff, but the interests of all Oklahomans in curbing governmental overreach and intrusion into their private lives absent relevant authority.

## PRAYER FOR RELIEF

Based on the foregoing, plaintiff request the following relief:

A. Plaintiff requests a judgment declaring the rule invalid as beyond the scope of the grant of rulemaking authority by the Legislature to the Board under Oklahoma Administrative Procedures Act, Okla. Stat. Ann. tit. 75 §250, *et seq*.

B. Plaintiff requests the Court grant temporary and permanent injunctive relief:

   a. restraining Defendants from violating Plaintiff's rights secured by Article II, §7 of the Oklahoma Constitution and the Oklahoma Administrative Procedures Act, 75 O.S. §250, *et seq*. in relation to the invalid rulemaking process and arbitrary and capricious enforcement as described herein;

C. Plaintiff requests this Court award reasonable attorney fees and costs.

D. Plaintiff requests any other relief as the Court deems just and proper under the facts, as may be developed through discovery, and applicable law.

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray this Court grant them the relief requested herein.

Respectfully Submitted:

__/s/Leslie Briggs_____  
Leslie Briggs, OBA # 33845  
Colleen McCarty, OBA # 34410  
Oklahoma Appleseed Center for Law and Justice, Inc.  
110 S. Hartford Ave. Suite 1008  
Tulsa, OK 74120  
Attorneys for Plaintiffs  

_/s/Josh Payton_____  
Joshua Payton, OBA # 34440  
Oklahoma Equality Law Center  
320 S. Boston Ave. Suite 1026  
Tulsa, OK 74103  
Attorney for Plaintiffs